IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BARBARA H. ENGBERG,
     Plaintiff,

vs.                             Case No. 3:10cv64/RV/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

I.     PROCEDURAL HISTORY

Plaintiff's application for DIB, filed January 23, 2006, was denied initially and on reconsideration (Tr. 23).[1]  On March 17, 2008, following a hearing, an administrative law judge ("ALJ") issued a decision in which he found that Plaintiff was not disabled under the Act (Tr.

_____

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on June 7, 2010 (Doc. 14).

23–33).  On December 29, 2009, the Appeals Council of the Social Security Administration ("SSA")

denied Plaintiff's request for review (Tr. 8–10).  Thus, the decision of the ALJ stands as the final

decision of the Commissioner, subject to review in this court.  <u>Ingram v. Comm'r of Soc. Sec.

Admin.</u>, 496 F.3d 1253, 1262 (11th Cir. 2007); <u>Falge v. Apfel</u>, 150 F.3d 1320 (11th Cir. 1998).  This

appeal followed.

## II.    FINDINGS OF THE ALJ

The ALJ made several findings relative to the issues raised in this appeal (Tr. 23–33A):

1)    Plaintiff has not engaged in substantial gainful activity since October 20, 2004, the
date she alleges she became disabled; she meets the insured requirements of the Act
through December 31, 2007.[2]

2)    Plaintiff's severe impairments include: cervical degenerative disc disease ("DDD"),
arthritis, peripheral neuropathy, and complex regional pain syndrome ("CRPS").[3]

3)    Plaintiff does not have an impairment or combination of impairments that meets or
medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4)    Plaintiff has the residual functional capacity ("RFC") to perform light work (as
defined in 20 C.F.R. § 404.1567(b)[4]), although she is limited to standing and walking
a total of five hours per workday.

---

[2] Thus, the time frame relevant to this appeal is October 20, 2004 (alleged onset), through December 31, 2007
(date last insured).  <i>See</i> Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997) (to be entitled to DIB, a claimant must show
she was disabled on or prior to her date last insured).

[3] Plaintiff notes, and the Regulations confirm, that CRPS is also known as Reflex Sympathetic Dystrophy
("RSD") or Reflex Sympathetic Dystrophy Syndrome ("RSDS") (<i>see</i> Doc. 18 at 3; <i>see also</i> Social Security Regulation
03-02p (effective October 20, 2003) (attached)).

[4] Light work is defined in section 404.1567 as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds.  Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of performing a full or
> wide range of light work, you must have the ability to do substantially all of these
> activities.  If someone can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

5)   Plaintiff can perform her past relevant work as a clerk and data entry operator and, therefore, she was not under a disability from October 20, 2004, through December 31, 2007.

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment

must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PERSONAL AND MEDICAL BACKGROUND

Plaintiff was born in May 1949, and she has a college education (Tr. 82, 93).  Her past work experience includes assembly line work, clerical office work, customer service/administrative work, data entry/clerical work, electronic assembly work, and substitute teaching (Tr. 87, 95–103).

Plaintiff alleges disability due to neurological problems and severe pain attacks on her right side that began after she hit her head on a fire extinguisher at a Walmart in October 2004. Plaintiff claims that the attacks occur every four hours, daily, and every two hours, nightly, and that during the attacks she experiences incapacitating, burning, right-sided pain (Tr. 23, 61, 82, 85–86, 107).

In relevant part, the medical evidence shows that on October 28, 2004, after the incident at Walmart, Plaintiff underwent cervical and thoracic spine magnetic resonance imaging ("MRI"). The cervical MRI revealed moderate central spondylosis at C5-6 and C6-7 and neural foraminal encroachment at C3-4 on the right. The thoracic MRI revealed mild to moderate degenerative changes with a mild anterior wedge deformity at T7 with "perhaps" a 50% loss of height (Tr. 256).

On November 16, 2004, Plaintiff was evaluated by Michael J. Given, M.D., for complaints of shortness of breath with exertional activity. A physical examination revealed clear lungs to auscultation, with no rhonchi or rales, and trace edema bilaterally in the extremities. Plaintiff's neurological system was grossly intact. Dr. Given noted a 1999 diagnosis of pulmonary sarcoidosis and ordered pulmonary function studies, which revealed mild small airway obstruction without air trapping and mild impairment of diffusion capacity. Dr. Given also noted that a September 2004 chest x-ray was within normal limits (Tr. 257–60).

T. Narayanaswamy, M.D., a neurologist at an Eglin Air Force Base ("EAFB") medical clinic, treated Plaintiff between November 2004 and August 2005 for burning pain in the right arm and face. Plaintiff reported that her symptoms began after she hit her head (or more specifically, her left occipital bone) at a Walmart in October 2004. She stated that several times a day she experiences spells of right facial pain and arm pain that come in waves, last varying lengths (that is, according to Plaintiff, they may last ten minutes, forty-five minutes, one hour, or "hours"), and then they "go[]" away" (Tr. 296, 294, 286). Plaintiff's neurological examination was normal except for bilateral abduction nystagmus (Tr. 296). Dr. Narayanaswamy ordered an electroencephalogram and motor and sensory nerve conduction studies, all of which were normal (Tr. 291–93). A repeat brain MRI was obtained in December 2004; it revealed an abnormality in the left superior portion of the pons and left lower portion of the mid-brain (Tr. 261), which Dr. Narayanaswamy described as "an

abnormal single density, which did not show signs of change" in size or appearance (Tr. 288, 294).[5]
Dr. Narayanaswamy noted a history of sarcoidosis which might be related to the brainstem lesion
on the MRI, although he opined that the lesion does not explain Plaintiff's reported "spells" of right-
sided pain (*see* Tr. 26, 294).

During February and March 2005, Plaintiff was treated by Frank Zondlo, M.D., a pain
management physician, for her right-sided pain.  Plaintiff reported that the pain spells occur three
to four times daily and last approximately forty-five minutes "when she is not taking Tegretol," and
that the pain and frequency of the spells are "markedly decreased" when she is taking Tegretol (Tr.
164).  Dr. Zondlo reviewed the cervical spine MRI and concluded there was no right-sided
pathology to account for Plaintiff's right-sided pain (*id.*).  Plaintiff's physical examination was
essentially normal with the exception of focal tenderness over the right suprascapular nerve,
which—Dr. Zondlo opined—suggested nerve entrapment (Tr. 164A).  Plaintiff underwent
suprascapular nerve pulsed radiofrequency electromagnetic field therapy and injections (Tr. 163).
Plaintiff reported "90-100%" relief of the right shoulder pain but continued to have forearm and
hand pain (*see, e.g.*, Tr. 163, 159).

Ruth Henchey, M.D., referred Plaintiff to the West Florida Regional Medical Center on June
14, 2005, for a diagnostic work-up related to possible multiple sclerosis ("MS").  Plaintiff underwent
somatosensory evoked response ("SER") nerve testing.  The median SER was normal bilaterally;
the posterior tibial SER testing yielded sub-optimal results, and it was therefore suggested that tibial
retesting be considered (there is no indication that the testing was redone) (Tr. 26, 165–68).

Thomas J. Manski, M.D., a neurosurgeon, evaluated Plaintiff in July 2005 for pain and
paresthesias of the neck, trapezius region, and right arm.  He noted that her cervical spine MRI
showed a disc-osteophyte complex at C5-6 and at C6-7 with canal compromise and neuro-foraminal
stenosis on the left.  He reported that a brain MRI from April 2005 revealed signal abnormalities
within the brainstem around the aqueduct of Sylvius in the mid-brain and pons, in the left frontal
region, and in the left parietal occipital region.  Plaintiff told Dr. Manski that she has a family

---

[5] Although this MRI was noted to be a "repeat" MRI, and Dr. Narayanaswamy noted no signs of change on this
MRI (that is, presumably, no change as compared to an earlier MRI), the undersigned has found no results or
documentation regarding an earlier MRI in the record.

history of MS, and that she was previously tested for MS, but her "work-ups" were negative. Dr. Manski scheduled Plaintiff for a cervical myelogram, which revealed a small extradural defect at C5-6 impinging in the left nerve root, as well as minimal anterior impression on the sub-arachnoid space at C5-6 and C6-7. The post-myelogram computed tomography scan showed DDD at C5-6 with a left-sided disc bulge and foraminal narrowing, as well as C6-7 disc space narrowing with left lateral recess narrowing and slight foraminal narrowing (Tr. 26, 188–202).

On October 5, 2005, upon referral by Dr. Henchy, Plaintiff saw Khurram Bashir, M.D., a neurologist with the Kirklin Clinic/Medical School at the University of Alabama at Birmingham ("UAB") (Tr. 27, 301). Plaintiff described episodic burning dysesthetic pain of the right arm occurring daily and lasting one to two hours. Dr. Bashir noted that Plaintiff "ha[d] been evaluated by multiple physicians, but no definite diagnoses had been made" and that various treatments had not provided relief (*id.*). Dr. Bashir stated there were no neurological deficits, and that Plaintiff's symptoms were inconsistent with MS and demyelination (Tr. 304). He noted that the brainstem lesion seen on MRI scans was possibly due to sarcoidosis (*id.*). Dr. Bashir diagnosed possible CRPS and noted Plaintiff's reported "history of change in the color and temperature of the skin when the [spells] occur, which would be consistent with [a] diagnosis [of CRPS]" (*id.*). He recommended a right brachial plexus MRI, the results of which were normal except for cervical disc disease (*id.*; Tr. 299).

The file also contains records from Terence Mitchell, M.D., documenting his treatment of Plaintiff (or treatment by an associate) at an EAFB clinic from approximately mid-October 2005 through March 2008. Plaintiff's complaints included dizziness, lightheadedness, swelling in her feet and ankles, lower left leg pain, left arm pain, and pain, numbness and tingling in her right arm (Tr. 144, 147). Dr. Mitchell's progress notes reflect diagnoses of history of sarcoidosis, breast cancer, idiopathic peripheral neuropathy, hypertension, gastroesophageal reflux disease, seasonal allergic rhinitis, peripheral edema, osteoporosis, RSD/CRPS, lumbago, and atrial fibrillation (Tr. 26–27).[6] On May 8, 2006, Dr. Mitchell opined in a letter addressed "To Whom it May Concern" that

---

[6] Some of Dr. Mitchell's progress notes are handwritten and difficult to decipher (*see, e.g.*, Tr. 209–16, 219–20, 225–26, 228–231, 395–400, 405–09). Thus, in this section of the Report the undersigned has relied in part on the summaries provided by Plaintiff's counsel (Tr. 144, 147) and the ALJ (Tr. 26–27).

Plaintiff's medications (for CRPS of the right posterior shoulder and arm) "make it very difficult for her to operate a motor vehicle, as well as, severely limit her ability to resume any semblance of a teaching career" (Tr. 375).  He further opined that Plaintiff's "current medical condition and medications make it unlikely that she will be able to maintain any job in teaching or any field in the near future" (*id.*).

W. J. Hamilton, D.O., a neurologist at the University of South Alabama, evaluated Plaintiff on February 6, 2006, for right arm pain occurring every few days (Tr. 204).  Dr. Hamilton diagnosed Plaintiff with right posterolateral pain and upper extremity pain, secondary to alleged trauma (i.e., the Walmart incident), and he noted that her pain was "without myelopathy, radiculopathy or features of [RSD]" (*id.*).  The results of nerve conduction and electromyography studies were essentially normal and unrevealing (Tr. 205–06).

Plaintiff was treated at a chiropractic clinic in May 2006 for cervicobrachial syndrome and cervical sprain or strain (Tr. 306–20).

Plaintiff returned to the neurology department at UAB on October 20, 2006, and on this occasion she saw Marla Morgan, M.D. (Tr. 435).  Plaintiff complained of different and worsening symptoms related to her spells, but physical and neurological examinations were basically normal with the exception of vibration sensation, which was decreased at the toes (Tr. 436–37).  Dr. Morgan reported that Plaintiff did not display a temperature differential, color change, or edema of the upper extremities (Tr. 437).  Finally, although the etiology of Plaintiff's symptoms was unclear, Dr. Morgan stated that CRPS—as well as toxic or metabolic disturbances—"remain in the differential" (*id.*).  Plaintiff returned to Dr. Morgan on April 27, 2007, and the treatment records from that visit are generally the same as those from the October 2006 visit (*see* Tr. 426–29).

On October 2, 2007, Dale K. Johns, M.D., a neurosurgeon, evaluated Plaintiff on a consultative basis in connection with her claim for DIB (*see* Tr. 410).  Plaintiff complained of episodes of burning pain starting in her right wrist and radiating up her arm to her head.  She stated that the episodes occurred four to five times daily and lasted from fifteen minutes to two hours.  She also complained of memory problems, instability, and an inability to control her left side.  Dr. Johns observed that Plaintiff's speech was somewhat slow and minimally slurred at times.  Her gait was stilted, with a six to eight-inch stride.  Plaintiff had full range of motion of the lumbar spine with

some discomfort at the endpoint.  Dr. Johns noted that cervical MRIs revealed cervical disc disease and spondylosis which was moderately severe to severe at C5-6 and C6-7, multi-level facet arthropathy, and osteopenia.  Dr. Johns was unable to provide a diagnosis for Plaintiff's symptoms. He completed a physical capacities evaluation on which he estimated that Plaintiff could occasionally lift and carry up to twenty pounds, sit three hours at a time, stand two hours at a time, and walk one hour at a time.  He opined that during an eight-hour workday Plaintiff could sit a total of eight hours, stand a total of two hours, and walk a total of three hours.  He further opined that she could occasionally reach overhead, push, pull, balance, stoop, kneel, crawl, work around moving machinery, tolerate exposure to temperature extremes and vibration, and use her left hand for reaching, handling, fingering, and feeling.  He indicated she could frequently use her right hand but rarely climb stairs or ramps and never climb ladders or scaffolds, crawl, work around unprotected heights, or (per her report) drive.  Plaintiff could, however, frequently tolerate exposure to humidity, wetness, dust, fumes, odors, and pulmonary irritants.  Finally, Dr. Johns noted that Plaintiff reported limitations in activities of daily living, but there was no objective evidence to support her complaints (Tr. 410–20).

Plaintiff returned to Dr. Morgan on November 2, 2007.  Dr. Morgan noted that a recent brain MRI revealed no evidence of mass or acute stroke.  Dr. Morgan diagnosed intractable CRPS and RSD (Tr. 422–25).  On November 8, 2007, Dr. Morgan completed a physical capacities evaluation, on which she estimated that Plaintiff could not walk a city block without rest, or sit or stand continuously for more than an hour.  She further opined that in an eight-hour workday, Plaintiff could not sit, stand, or walk more than a total of two hours.  She estimated that Plaintiff could occasionally lift and carry less than ten pounds and would need ten to fifteen-minute breaks every hour in an eight-hour workday.  Dr. Morgan also opined that Plaintiff could not use her right arm for grasping, fine manipulation, or reaching and could not use her left hand for fine manipulation. She noted Plaintiff could use her left arm for grasping or reaching during 25% of a workday. Finally, Dr. Morgan reported that Plaintiff experienced pain which was virtually incapacitating and that physical activity greatly increased her pain (Tr. 431–34).

V.      DISCUSSION

In the instant appeal, Plaintiff alleges error by the ALJ and by the Appeals Council.  More specifically, Plaintiff alleges the ALJ erred in discounting her subjective complaints and by failing to follow certain Social Security Regulations ("SSRs"), including SSR 96-4p (regarding the determination of whether a medically determinable impairment exists) and SSR 03-2p (regarding the evaluation of RSDS/CRPS).  Plaintiff contends the Appeals Council erred by failing to adequately consider new and material evidence with which it was presented (*see* Doc. 18).

    A.  ALJ's Alleged Errors

To establish disability based on testimony concerning pain or other subjective symptoms, a three-part "pain standard" must be satisfied.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  That is, a claimant must first show evidence of an underlying medical condition, and then, either (a) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (b) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged pain.  *Id.*; *see also* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that this "standard also applies to complaints of subjective conditions other than pain").  "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability."  Holt, 921 F.2d at 1223.  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *See* Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

When medical signs and laboratory findings establish that a claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and the extent to which those symptoms limit the claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1); SSR 96–7p at 2.  In doing so, the ALJ is to consider the objective medical evidence and other evidence provided by the claimant and her treating and non-treating sources concerning what may precipitate or aggravate her symptoms, what medications, treatment or methods are used to alleviate the symptoms, and how the symptoms affect the claimant's daily living.  20 C.F.R. § 404.1529(c)(3); SSR 96–7p at 3.  The ALJ's credibility finding must be grounded in the evidence and contain specific reasons that are supported by the record evidence.  SSR 96–7p at 4; Hale, 831 F.2d at 1011.

Here, in evaluating Plaintiff's subjective complaints the ALJ first referenced the correct pain standard (Tr. 29). He then summarized Plaintiff's testimony regarding her pain and other symptoms, which in relevant part included complaints of unsteady hands; burning pain; dizziness; slurred speech; an inability to lift more than approximately twelve pounds, sit more than three hours, walk an hour, stand more than two hours, wash or dry her hair, or perform housework; and "attacks" that begin in her hand, move to her arm, and go to her face and head, causing severe head pain and excessive perspiration (Plaintiff noted that the severity of her attacks depends on which medications she is taking and how much she uses the arm, and that the attacks sometimes result in arm, neck, and right eye pain) (Tr. 31). The ALJ then determined that Plaintiff's complaints are not credible to the extent they are inconsistent with the RFC determination (that is, light work with standing and walking limited to a total of five hours per day) (*see* Tr. 28–31).

In support of his credibility findings, that ALJ articulated the following reasons:  (1) despite Plaintiff's complaints of recurrent right arm pain and dysesthesia, no clear diagnosis exists; (2) diagnostic "work-up[s]" revealed cervical DDD and arthritis, but those conditions are primarily left-sided and provide no basis for the right-sided pain and symptoms of which Plaintiff complains, (3) Dr. Morgan diagnosed CRPS or RSD, but she observed no temperature differential, color change, or edema of Plaintiff's upper extremities as might be expected if Plaintiff had CRPS/RSD; (4) extensive testing and studies resulted in no definitive cause for Plaintiff's reported symptoms; (5) despite Plaintiff's complaints of difficulty using her left arm, Dr. Morgan observed no abnormalities, and Plaintiff's neurological findings—as assessed by Dr. Morgan—"have remained essentially normal"; and (6) no etiology exists for Plaintiff's complaints of slurred speech (Tr. 31).

Plaintiff contends the ALJ erred because he discounted her complaints based only on a lack of objective proof of her symptoms. Plaintiff is correct. Each of the six reasons articulated by the ALJ is based on a lack of objective proof of Plaintiff's symptoms (or a lack of definitive diagnoses related thereto). And, while a lack of such objective evidence is a factor that may properly be considered in discounting a claimant's complaints, it may not be the only basis for doing so. *See* 20 C.F.R. § 1529(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"); SSR 96-7p

(because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," an ALJ "<u>must</u> consider [other factors] <u>in addition to the objective medical evidence</u> when assessing the credibility of an individual's statements") (emphasis added); *see also, e.g.*, <u>Cline v. Sullivan</u>, 939 F.2d 560, 566 (8th Cir. 1991) ("an ALJ may not base a denial of benefits solely on a lack of objective medical evidence") (citations omitted).[7]

> Moreover, in concluding his discussion of Plaintiff's credibility, the ALJ stated:

> [P]hysical or mental impairments must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical or laboratory diagnostic techniques.  The statements of an applicant, including her own description of symptoms, are insufficient to establish the presence of a physical or mental impairment.

(Tr. 31).  These statements suggest some confusion on the ALJ's part as to the proper method for determining whether an impairment <u>exists</u> versus the proper method for determining whether subjective complaints related to the impairment are credible, as explained next.

The ALJ determined early in his opinion that Plaintiff suffers from the medically determinable physical impairment of RSDS/CRPS, but he then appears to discount Plaintiff's complaints because the medical evidence fails to establish the existence of this impairment.  If the ALJ concluded that necessary medical evidence was lacking, he should have concluded early on that Plaintiff had no medically determinable physical impairment (much less the <u>severe</u> impairment) of RSDS/CRPS.  *See* 20 C.F.R. §§ 404.1508, 404.1528; *see also* SSR 96-4p ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the <u>existence</u> of a medically determinable physical or mental impairment.") (emphasis added).  If no medically determinable impairment is established, a claimant must be deemed "not disabled" at step two.  SSR 96-4p.

---

[7] In addressing the ALJ's credibility findings, the Commissioner notes as follows:  "The absence of an objective medical basis to support th degree of severity of subjective complaints is an important factor to consider in evaluating the credibility of testimony and complaints." (Doc. 21 at 6 (citing § 404.1529)).  But the Commissioner fails to acknowledge that a lack of objective medical evidence cannot be the sole basis for discounting a claimant's complaints (*see* Doc. 21 at 5–6).

Compounding the error/confusion in this case, is the ALJ's overall evaluation of Plaintiff's RSDS/CRPS and the medical opinions related thereto.  As previously noted, the ALJ found Plaintiff's RSDS/CRPS to be a severe impairment, and he further found that it did not meet or equal a listed impairment.  But it is far from clear that the ALJ followed the appropriate regulation in making these findings.

SSR 03-2p, cited nowhere in the ALJ's opinion, is titled "Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome" (*see* attached).  The purpose of this regulation is to explain the policies of the SSA for developing and evaluating disability claims based on RSDS/CRPS.  The regulation explains the disease, discusses how it typically presents, notes how it is diagnosed and treated, and specifically discusses how it is identified as a medically determinable impairment and how the duration and severity of the disease is established.

It is not necessary to recite all the relevant provisions of SSR 03-02p here, since the regulation is attached to this Report, but it is important to emphasize certain provisions.  First, SSR 03-02p provides that the <u>existence</u> of the RSDS/CRPS is established "in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant" and one or more of the following clinically documented signs in the affected region following the precipitating event: swelling, autonomic instability (which is "seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh)"), abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected region of the initial injury.  SSR 03-02p.  Although the ALJ found Plaintiff's RSDS/CRPS to exist (that is, he found it to be a medially determinable impairment), he did not identify any of the foregoing clinically documented signs or otherwise explain the basis for his finding.  Second, SSR 03-02p discusses the determination of whether a claimant's RSDS/CRPS is a <u>severe</u> impairment.  In relevant part the regulation states that because RSDS/CRPS is not a listed impairment, "the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist."  Here, the ALJ determined (and generally stated) that Plaintiff's RSDS/CRPS did not meet or equal a listed impairment, but he did not compare any specific findings to any particular listing or otherwise explain how he determined that medical equivalence does not exist (as previously noted, there is no

listing for RSDS/CRPS).  Indeed, it appears to the undersigned that the ALJ may not have even been aware of SSR 03-02p.  On this record the undersigned cannot confidently conclude that the ALJ applied the proper legal standards in evaluating Plaintiff's RSDS/CRPS.

In a related argument Plaintiff contends the ALJ erred in discounting the opinions of Dr. Mitchell and Dr. Morgan, both of whom are treating physicians, diagnosed RSDS/CRPS, and provided opinions regarding Plaintiff's physical capacities and work-related abilities.  As noted *supra*, Dr. Mitchell treated Plaintiff for approximately two and one-half years, and he opined in a letter that Plaintiff's CRPS and medications make it very difficult for her to operate a motor vehicle, severely limit her ability to resume any semblance of a teaching career, and make it unlikely that she can maintain a job of any sort.  While this opinion does not necessarily preclude all work, the ALJ did not acknowledge the opinion or specifically state the weight he assigned to it.[8]  In failing to do so, the ALJ erred.  *See* 20 C.F.R. §§ 404.1527(b), (d) ("we will always consider the medical opinions in your case," and "we will evaluate every medical opinion we receive").

The ALJ did acknowledge Dr. Morgan's opinions, as contained on the physical capacities evaluation, but he assigned "little weight" to her opinions because Dr. Morgan's "clinical and laboratory findings have been essentially unremarkable; she, and other physicians, "have been unable to establish any satisfactory basis for [Plaintiff's] reported symptoms; and "it appears that Dr. Morgan has based her findings primarily on [Plaintiff's] subjective complaints" (Tr. 32).  The ALJ also noted, in the context of discounting Plaintiff's complaints, that Dr. Morgan diagnosed RSDS/CRPS without observing a temperature differential, color change, or edema of Plaintiff's upper extremities as might be expected with such a diagnosis.  It thus appears that the ALJ substituted his opinion for the medical opinion of Dr. Morgan, who is a specialist, or similarly that the ALJ questioned the reliability of Dr. Morgan's RSDS/CRPS diagnosis, or both.  Either way, the ALJ erred.  Having previously determined that Plaintiff's RSDS/CRPS was a severe impairment, it was improper to discredit Dr. Morgan's opinions as to the existence of the impairment (as the ALJ seemingly did).  Additionally, while Dr. Morgan may have relied in part on Plaintiff's subjective

---

[8] By inference the opinion was rejected since the ALJ stated that he assigned controlling weight to the opinions of Dr. Johns.

complaints in formulating her opinions, the undersigned has already concluded that the ALJ erred in discounting (many of) those same subjective complaints.

And finally, the ALJ adopted the opinions of Dr. Johns, a one-time consultative examiner, over those of Dr. Morgan (and, presumably, Dr. Mitchell).  The ALJ failed to acknowledge, however, that signs of RSDS/CRPS are not present continuously or may be present at one examination but not another, *see* SSR 03-02p, which lack of continuity elevates the opinions of long term treating physicians—as opposed to those of one-time consultative examiner—to a particularly high level of  importance in a case such as this.  *See id.* (stating that "longitudinal clinical records reflecting ongoing medical evaluation and treatment from [a claimant's] medical sources, especially treating sources, are extremely helpful in documenting the presence of" RSDS/CRPS symptoms, and noting that "[t]ransiet findings are characteristic" of the disease).  Thus, although Dr. Johns may not have observed certain RSDS/CRPS symptoms, it might be simply because they were not present the day he examined her.  Stated another way, the fact that Dr. Johns did not observe certain RSDS/CRPS symptoms does not establish that they never existed, since such symptoms are often transient.  For all these reasons, the undersigned cannot conclude that the ALJ applied the proper legal standards in weighing the opinions of Drs. Morgan and Mitchell.

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts.  Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); Foote, 67 F.3d at 1562 (stating that an insufficient credibility finding is "a ground for remand when credibility is critical to the outcome of the case") (emphasis added); Salter v. Astrue, Case No. 3:08cv189/RV/EMT (N.D. Fla. May 22, 2009 (doc. 15)) (same).  A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or

without remanding the case for a rehearing); <u>Carnes v. Sullivan</u>, 936 F.2d at 1219 ("The record . . . is fully developed and there is no need to remand for additional evidence.").

Here, in discounting Plaintiff's complaints the ALJ cited the correct pain standard and articulated six reasons for finding Plaintiff less than fully credible.  His reasons, however, focused on a lack of corroborating objective evidence and therefore—while proper—are insufficient to uphold his overall credibility findings.  His error in this regard is most appropriately addressed by a remand and reconsideration of Plaintiff's subjective complaints, especially considering that the evidence in this case does not point unequivocally to a specific finding of disability (making a finding of disability by this court inappropriate).  Moreover, although the ALJ failed to properly evaluate Plaintiff's RSDS/CRPS and weigh the medical opinions related thereto, the error began at the first stages of the sequential evaluation and—in the undersigned's opinion—affected all subsequent analyses.  Thus, the case is most appropriately remanded to reconsider altogether Plaintiff's RSDS/CRPS in accordance with SSR 03-02p, as well as the opinions of Plaintiff's treating physicians.

B.  Evidence Presented to the Appeals Council ("AC")

Plaintiff contends that new and material evidence was presented to the AC which further supports or corroborates the opinions of Dr. Mitchell and Dr. Morgan, and that the AC erred in denying Plaintiff's request for review (or, more specifically, erred in concluding that the additional evidence provided no basis for changing the ALJ's decision) (Doc. 18 at 16–20).  The evidence submitted to the AC consists of nearly 230 additional pages of additional medical records (Tr. 451–677), including records from a neurology clinic, records documenting (apparently) Plaintiff's eighty-one pound weight loss (*see* Tr. 455–56), more recent records from the EAFB clinic and UAB neurology department, and a restrictive physical capacity assessment by Dr. Masood Hashmi (a new treating physician, who opines that Plaintiff is "permanently disabled" (Tr. 471–74)).  The records appear to further substantiate the presence of RSDS/CRPS and, arguably, document worsening of Plaintiff's condition (*see, e.g.*, Doc. 18 at 16–20 & nn. 17–21).  While these records are dated beyond Plaintiff's date last insured, they nevertheless appear relevant to Plaintiff's claim (or more specifically, relevant to an evaluation of the existence or severity of her RSDS/CRPS).  *See, e.g.*, SSR 03-02p (the signs and symptoms of RSDS/CRPS may worsen over time).  And, given that the

undersigned has already concluded that remand is necessary in this case, it is recommended that upon remand the additional records be considered in connection with Plaintiff's claim for DIB

For the foregoing reasons, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and should not be affirmed.  *See* 42 U.S.C. § 405(g); Foote, 67 F.3d at1556 (remanding for additional administrative proceedings).

Accordingly, it is respectfully **RECOMMENDED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the Commissioner be **REVERSED**, that this action be **REMANDED** to the Commissioner for further proceedings consistent with this report.

At Pensacola, Florida this 29th day of June 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**